UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

MYSTERY PRODUCTIONS ENTERTAINMENT, LLC, T/A CLUB RENDEZVOUS, ) ) ) )

Plaintiff, )

v. )          Civil Action No.07-00707 (HHK)

DISTRICT OF COLUMBIA, )

Defendant. )
_____

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

Defendant the District of Columbia ("the District") hereby submits this memorandum of points and authorities in opposition to plaintiff's "Motion Against the District of Columbia Government for a Preliminary and Permanent Injunction," pursuant to LCvR 65.1(c).[1]

The Court should deny plaintiff's request for emergency injunctive relief, because plaintiff lacks standing, its claims are unripe, and it has shown no imminent, irreparable injury.

Further, the Court should decline plaintiff's invitation to inject itself into this quintessentially local matter. What plaintiff claims is an imminent breach of its constitutional rights is nothing more than a premature challenge to a matter of preeminent local concern—the regulation of liquor-licensees and adult-oriented businesses.

---

[1]        Although plaintiff has requested a hearing "as soon as this Court's calendar permits[,]" P.Mem. at 2, the District avers that, as demonstrated more fully herein, because plaintiff has failed to show an imminent threat of irreparable harm, the Court may comfortably "decid[e] the motion on the papers" alone. LCvR 65.1(d).

Plaintiff's papers are incorrect on the law and, at best, opaque on the facts.[2]

## I. Factual and Procedural Background

Plaintiff filed suit on or about April 18, 2007, seeking declaratory and injunctive relief to prevent the "imminent" enforcement of D.C. Official Code § 25-374 (2006 Supp.), alleging that that provision is "unconstitutional under the First and Fourteenth Amendments . . . ." P.Mem. at 1–2.[3]

Plaintiff claims that it was "notified by D.C. Government Officials that the government plans to enforce" that code provision "against his [sic] club." *Id.* at 2. Plaintiff apparently operates an "adult entertainment establishment" that features nude dancing, at 2840 Alabama Avenue, S.E. *Id.* at 2–3.[4]

That address is in the Skyland Shopping Center, an area designated for "revitalization." *See, generally, Franco v. District of Columbia*, 422 F.Supp.2d 216, 218 (D.C. 2006). Beginning in 2004, the Council of the District of Columbia passed legislation authorizing the National Capital Revitalization Corporation ("NCRC") "to exercise eminent domain power to redevelop the Skyland Center." *Id.* at 218 (citing D.C. Official Code § 2-1219.19).[5]

---

[2]    Plaintiff's memorandum appears to be a haphazard cut-and-paste from another case in another jurisdiction. *See, e.g.*, P.Mem. at 5, 10 (referencing a law "like PG-300," "the State," and "Prince George's County").

[3]    Notwithstanding plaintiff's allegations, the Fourteenth Amendment does not apply to the District of Columbia. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

[4]    The District reserves and does not waive any future defensive motions or pleadings and does not admit the factual allegations in plaintiff's filings except for purposes of this opposition.

[5]    "In 1998, D.C. created NCRC as an independent instrumentality to encourage economic development and remove blight." *Autozone Dev. Corp. v. District of Columbia*, ___

On or about March 27, 2006, the RLA Revitalization Corporation ("RLARC"), a subsidiary of the NCRC, acquired title to the subject property. *See* Defendant's Exhibit No. ("DEx.") 1. On or about April 6, 2007, RLARC sent plaintiff a letter giving it 90 days (*i.e.*, until July 6, 2007) to vacate the premises. DEx. 2. The letter also noted the continuing efforts that the RLARC was making "to find a replacement location for your business." *Id.*

## II. Argument

A. *Plaintiff Fails to Meet Any of the Elements Necessary for Emergency Injunctive Relief.*

Plaintiff has failed to meet its difficult burden. In order to obtain emergency injunctive relief, plaintiff must satisfy *each* prong of the following four-part test, by demonstrating: (1) a substantial likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) less injury to the non-moving party than the moving party if an injunction is ordered; and (4) that a preliminary injunction is consistent with the public interest. *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998).

Interim injunctive relief "is an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (interim injunctive relief is "an extraordinary and drastic remedy")).

While a strong showing on one of the four factors may make up for a weaker showing on another, *Serono Labs.*, 158 F.3d at 1318, a particularly weak showing on one factor may be more

---

F.Supp.2d ___, 2007 WL 987558 (D.D.C. Mar. 29, 2007). NCRC is independent of the District of Columbia government, and hence, to the extent plaintiff complains of past or future actions by that "instrumentality," it has sued the wrong party. *See* Fed. R. Civ. P. 19.

than the other factors can "compensate" for. *Taylor v. RTC*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *amended on other grounds on reh'g.*, 66 F.3d 1226 (D.C. Cir. 1995).

Plaintiff failed to make a satisfactory showing on *any* of the four factors, hence its demand for emergency injunctive relief should be denied.

### 1. Plaintiff Fails to Establish A Substantial Likelihood of Success On the Merits.

Plaintiff has no chance of success on the merits, even assuming it could surmount the fatal flaws of ripeness and standing.

Preliminarily, plaintiff lacks standing because its allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001).

A federal court's jurisdiction can only be invoked when a plaintiff has suffered some threatened or actual injury resulting from a defendant's putatively illegal action. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). *See also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (*quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Plaintiff has not shown *any* "certainly impending" injury. Plaintiff has not yet been required to relocate, nor has it sought permission to transfer its liquor license to a new location, much less (as implied) been *denied* permission to transfer. Plaintiff's allegations rest on no more than a flimsy chain of speculation.

To have standing, a plaintiff must plead and prove *specifics*. "To meet the injury in fact requirement, the plaintiffs must demonstrate a concrete, actual, or imminent injury." *Autozone*

*Dev. Corp.*, 2007 WL 987558 at *4 (citing *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999)). *See also Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) ("[s]tanding cannot be 'inferred argumentatively' but rather 'must affirmatively appear in the record'") (quoting *Spencer v. Kemma*, 523 U.S. 1, 10–11 (1998)).[6]

Plaintiff lacks standing. Plaintiff has failed adequately to allege causation; it has not alleged any concrete injury "fairly traceable" to *the District's* action here. *See Autozone Dev. Corp.*, 2007 WL 987558 at *3–*4 (plaintiffs lack standing because, *inter alia*, "unsupported speculation regarding the future actions of non-parties does not constitute injury to the plaintiffs.") (citing *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C. Cir. 1996)).

Moreover, plaintiff's claims are not ripe; it has not yet even applied to transfer its liquor license to another location (nor, obviously, has it been denied that request), and there is no imminent administrative action pending. Plaintiff complains here, vaguely, of the imminent "denial" of its rights, but provides no evidence of any imminent threat, failing even to identify the government entity that allegedly "plans to enforce" District law. P.Mem. at 2.[7]

Plaintiff's claims are dependent on "contingent future events," hence they are unripe. *Flynt v. Rumsfeld*, 355 F.3d 697, 702 (D.C. Cir. 2004) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).

---

[6]    In the classic formulation, for a plaintiff to have standing, it must show (1) concrete, personal injury, (2) which must be fairly traceable to the defendants' conduct, and (3) such injury must be "likely" to be redressed if the relief sought is granted. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If plaintiff cannot meet all three prongs of this test, the Court must dismiss the suit for lack of standing.

[7]    Plaintiff also misidentifies D.C. Official Code § 25-274 (2006 Supp.) as a "zoning ordinance." P.Mot. at 2. That provision is part of Title 25, "Alcoholic Beverage Regulation."

Here, the District's Alcoholic Beverage Control Board may or may not grant plaintiff's future request for license transferal. Plaintiff's request for emergency injunctive relief is unripe, as it has suffered no cognizable "injury." Plaintiff appears to *assume* that its application for transfer (which it has not yet submitted) will be rejected. Such conjecture is insufficient to support standing. *See Texas*, 523 U.S. at 300 ("a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)); *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (same).

Because no final action has been taken here *by the District*, plaintiff's claims are unripe.

This Court, in similar litigation, has repeatedly rejected claims involving this same project. *See, e.g., Franco*, 422 F.Supp.2d at 224–25 (takings claim is unripe and "premature" until District actually takes the property and provides or fails to provide compensation); *Rumber v. District of Columbia*, 427 F.Supp.2d 1, 4–5 (D.D.C. 2005) (same).

Moreover, under the ripeness doctrine, a court must examine the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nevada v. Department of Energy*, 457 F.3d 78, 84 (D.C. Cir. 2006) (quoting *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985)). The Supreme Court has elaborated, concluding that in ripeness challenges a court must consider "(1) whether delayed review would cause hardship to the plaintiff[;] (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Nevada*, 457 F.3d at 84 (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Here, delayed review would cause no hardship whatever to plaintiff, as it may raise any challenges it may have to the rejection of the transfer of its liquor license *if and when* that rejection occurs. *See Franco*, 422 F.Supp.2d at 225 (plaintiffs will not suffer undue hardship on dismissal for ripeness, because "they will have an opportunity to raise their constitutional challenges in the state condemnation proceeding."); *Rumber*, 427 F.Supp.2d at 6 (plaintiffs will not suffer undue hardship on dismissal for ripeness, because "the court does not change the legal rights of the parties.") (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998) (no legal hardship occurs when court does not "command anyone to do anything or to refrain from doing anything . . . grant, withhold, or modify any formal legal license, power, or authority; . . . subject anyone to any civil or criminal liability[, or create] legal rights or obligations.")).

Similarly, the "further factual development" contemplated in case law will occur in the local proceedings, *if and when* plaintiff requests and is denied permission to transfer its liquor license. Thus, plaintiff's claims are not yet ripe. *See Texas*, 523 U.S. at 301 (postponing adjudication gives state courts the opportunity to resolve any constitutional issues that may be present).

Moreover, premature judicial intervention by this Court would inappropriately interfere with further proceedings in this matter of substantial local importance, the licensing and zoning of adult-oriented businesses that sell alcohol.

Controlling precedent strongly supports the denial of the instant motion. In *JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004), the operator of a "sexually oriented business establishment" (an adult video store) brought suit challenging the constitutionality of District zoning regulations, and sought to enjoin the ongoing administrative enforcement action.

The district court dismissed all of plaintiff's claims for injunctive and declaratory relief on the basis of abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and the Circuit affirmed.

> The ongoing District of Columbia proceedings are judicial in nature and implicate important District interests; those proceedings afford [plaintiff] an adequate opportunity to litigate its federal claims; and there are no extraordinary circumstances warranting equitable relief. Accordingly, the criteria for application of the *Younger* doctrine have been satisfied, and the district court's dismissal of [plaintiff]'s complaint was appropriate.

*Id*. at 1128; *see also Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996) (same).

Although in the instant matter there is apparently no current, ongoing administrative proceeding with regard to plaintiff's liquor license, the Circuit in *JMM Corp.* made a number of findings that are directly applicable here. The Circuit found that, regardless of whether proceedings begin at the Superior Court or at the administrative level, the regulated entity has an adequate opportunity to raise its constitutional claims as defenses to any enforcement of District law. *JMM Corp.*, 378 F.3d at 1121.[8]

In the District, the holder of a liquor license who seeks to transfer to another location must apply for permission from the Alcoholic Beverage Control Board. *See* D.C. Official Code §§ 25-311, 25-314, 25-317 (2006 Supp.). *See also* Tit. 23, D.C. Mun. Regs., Ch. 15, 16 (2007).

> Before any license is issued or renewed, and before any substantial change in the operation of a licensed establishment . . . the Board shall ensure that proper notice has been provided to the public and that the public has been given at least 45 days in which to protest the license and that an administrative review has been conducted."

*Id*. at 25-431(g).

---

[8]    "Whether or not the [entity] can raise its constitutional defenses at the administrative level, 'it is sufficient under [*Younger*] that constitutional claims may be raised in state-court judicial review of the administrative proceeding.'" *Id*. at 1121 (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986)).

If such a protest is filed, the ABC Board schedules a hearing to receive testimony and other evidence regarding the application. *Id.* at §§ 25-432; 25-444.

Consequently, even assuming that plaintiff here applies for a transfer of its license, and that transfer is denied, plaintiff will have ample opportunity to raise its constitutional claims regarding § 25-374, either in the protest hearing, or, if there are no protests and the Board denies the request without a hearing, at the D.C. Court of Appeals. *See* D.C. Official Code § 2-510(a) (2006 Supp.) (any person aggrieved by an agency decision "is entitled to a judicial review thereof" in the D.C. Court of Appeals).

The Circuit noted in *JMM Corp.* that *Younger* abstention was appropriate "even where a defendant levels a facial First Amendment challenge against a regulation and contends that its existence has a chilling effect on his free speech." *JMM Corp.*, 378 F.3d at 1122 n.11.[9]

The Circuit also reaffirmed that "enforcement of [land-use] regulations, like those at issue here, constitutes an important state interest." *Id.* at 1126 (citing *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 435–37 (2002); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986)).[10]

---

[9]    To the extent plaintiff argues that D.C. Official Code § 25-374 is subject to "two possible interpretations," P.Mem. at 3, abstention would still be appropriate. *See JMM Corp.*, 378 F.3d at 1124–25 (discussing abstention under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), which holds that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.") (quoting *Harris County Comm'rs v. Moore*, 420 U.S. 77, 83 (1975)). *Cf. Legal Serv. Corp. v. Velazquez*, 531 U.S. 533, 545 ("It is well understood that when there are two reasonable constructions for a statute, the Court should prefer the interpretation which avoids the constitutional issue.") (citations omitted).

[10]    *See also, generally, Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62–63 (1976) (upholding zoning regulation of sexually oriented businesses as valid "time, place, and manner" restriction).

As noted, however, although *JMM* involved zoning regulations, it comfortably encompasses the specific interests implicated *here* (the regulation of sexually oriented businesses which sell alcohol), which are no less important to the District.[11]

*Plaintiff's Constitutional Claims*

Notwithstanding the above, while plaintiff purports to cast this matter as a First Amendment and Equal Protection challenge, even a cursory review of its filings reveals a profound misunderstanding of the relevant case law.

---

[11]     "[T]he broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." *California v. LaRue*, 409 U.S. 109, 114 (1972). Under that provision, states have the power to totally prohibit the sale of liquor within their boundaries, and the concomitant power to regulate the times, places and circumstances under which liquor may be sold. *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 715 (1981) (*per curiam*). The D.C. Circuit considers the District a state for Twenty-first Amendment purposes. *See Milton S. Kronheim & Co., Inc. v. District of Columbia*, 91 F.3d 193, 199–200 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1186 (1997).

"The Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980) (states have "wide latitude" as to choice of means to accomplish their permissible ends under the Amendment). "Given the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly." *North Dakota v. United States*, 495 U.S. 423, 433 (1990).

Congress, from nearly the founding of the District of Columbia, delegated to it the power to regulate businesses generally, and specifically sellers of alcoholic beverages. *See District of Columbia v. John R. Thompson, Inc.*, 346 U.S. 100 n.9 (1953) (*citing* the Act of May 3, 1802, 2 Stat. 195, 197 (City of Washington empowered to provide for licensing and regulation of "retailers of liquors")); *see also* the Act of May 15, 1820, 3 Stat. 583, 587 (authorizing Council to provide "for licensing, taxing, and regulating, auctions, retailers, ordinaries").

This regulatory police power exists *independently* of any subsequent grants of authority. "Entirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996).

Although the expedited nature of these proceedings preclude a full analysis of the relevant cases, it is beyond dispute that the government's purpose in enacting a regulation allegedly infringing on speech is the threshold consideration as to whether such regulation is "content-neutral." *See, e.g., Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 763 (1994). Because laws like those implicated herein are designed to prevent and/or alleviate the adverse secondary effects of such businesses, the restrictions have repeatedly been held to be content-neutral, subject to intermediate scrutiny. *See, e.g., Renton*, 475 U.S. at 48–50. A city's concerns regarding the adverse secondary effects of sexually oriented businesses have also been repeatedly held to constitute a significant government interest. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 294–95 (2000) (*plurality opinon*); *Renton*, 475 U.S. at 50, *Young*, 427 U.S. at 71. The courts have repeatedly upheld regulations creating buffer zones between such businesses and other uses, such as residential and school uses. *See Young, supra*, and *North Avenue Novelties, Inc. v. Chicago*, 88 F.3d 441 (7th Cir. 1996).

Moreover, there can be no reasonable dispute that the District's regulation here is rationally related to its substantial interests in regulating the sales of alcohol and attempting to limit the impacts of sexually oriented businesses. Although "nude dancing is not without its First Amendment protections[,]" *Schad v. Mt. Ephraim*, 452 U.S. 61, 66 (1981), "the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." *44 Liquormart, Inc.*, 517 U.S. at 516 (citing *California v. LaRue*, 409 U.S. 109, 118 (upholding state's regulation of nude dancing in places where alcohol is served)). *See also Rubin v. Coors Brewing Co.*, 514 U.S. 476, 482 n.2 (1995) (citing *LaRue*, 409 U.S. at 138 (holding that States may ban nude dancing in bars and nightclubs that serve liquor)).

Plaintiff's claims regarding the "legislative record" here should be viewed with similar skepticism. *See, e.g., City of Erie*, 529 U.S. at 296–97:

> The asserted interests of regulating conduct through a public nudity ban and of combating the harmful secondary effects associated with nude dancing are undeniably important. And in terms of demonstrating that such secondary effects pose a threat, the city need not "conduct new studies or produce evidence independent of that already generated by other cities" to demonstrate the problem of secondary effects, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." [*Renton*, 475 U.S. at 51–52]. Because the nude dancing [here] is of the same character as the adult entertainment at issue in *Renton*, *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976), and *California v. LaRue*, 409 U.S. 109 (1972), it was reasonable for Erie to conclude that such nude dancing was likely to produce the same secondary effects. And Erie could reasonably rely on the evidentiary foundation set forth in *Renton* and *American Mini Theatres* to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood. [E]ven in cases addressing regulations that strike closer to the core of First Amendment values, we have accepted a state or local government's reasonable belief that the experience of other jurisdictions is relevant to the problem it is addressing.

*Id*. (*plurality opinion*) (citing *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 393, n. 6 (2000)) (parallel citations omitted).

## 2. Plaintiff Has Failed to Establish Irreparable Harm As A Matter of Law.

Plaintiff has failed to make any showing of imminent, irreparable harm and therefore its demand for emergency injunctive relief must fail.

At a minimum, a plaintiff seeking emergency injunctive relief must make a threshold showing of irreparable injury. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("we require the moving party to demonstrate at least 'some injury . . . .'").

Plaintiff makes no competent showing of *any* injury, much less imminent, *irreparable* injury. Consequently, the Court may deny its request for emergency injunctive relief without considering any other factors. *See Chaplaincy of Full Gospel Churches v. England*, 455 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore

grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.") (citing *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1210–11 (D.C. Cir. 1989)).

As noted, plaintiff has not applied to transfer his liquor license, nor has such application been rejected; there is no "emergency" here in any sense of the word. The evidence establishes that plaintiff may continue to operate for at least two more months (until at least July 6, 2007). *See* DEx. 2.

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), sets forth the guiding principles for determining whether irreparable harm exists: (1) the injury must be both *certain* and *great*, not something merely feared as likely to occur at some indefinite time; (2) the injury must be of such imminence that there is a "clear and present" need for relief to prevent it; and (3) economic loss is insufficient to constitute irreparable harm unless the plaintiff's very existence is threatened. *See also Sampson v. Murray*, 415 U.S. 61, 88–90 (1974).

All of the threatened harms alleged by plaintiff are entirely speculative, hence plaintiff's claims are unripe. *See infra*. Moreover, plaintiff's single, self-serving and conclusory declaration is lacking in any meaningful detail, and is insufficient as a matter of law to support the grant of emergency injunctive relief. *See, e.g.*, *Nat'l Assn. of Psychiatric Health Sys. v. Shalala*, 120 F.Supp.2d 33, 44 & n.9 (D.D.C. 2000) (preliminary injunction denied where plaintiffs "offer[ed] no concrete, reliable evidence to support their contentions of irreparable harm.").[12]

---

[12]    While it is generally true that the imminent destruction of an existing business may, under certain circumstances, constitute irreparable harm, *see, e.g., Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977), that proposition is inapposite here. The relevant cases concern existing, ongoing businesses actually threatened with destruction. Here, however, plaintiff has not yet applied to transfer his liquor license, nor has that application been denied, as feared, to say nothing of the lack of details and competent evidence underlying plaintiff's claimed financial injuries. There is

To the extent plaintiff claims its constitutional rights are now (or will be) violated, it has similarly failed to meet its burden. *See, e.g., Wagner v. Taylor*, 836 F.2d 566, 577 n. 76 (D.C.Cir.1987) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, . . . the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant."); *Veitch v. Danzig*, 135 F.Supp.2d 32, 37 (D.D.C. 2001) (violation of constitutional rights is not itself an irreparable harm) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Ashland Oil, Inc. v. FTC*, 409 F.Supp. 297, 307 (D.D.C. 1976) ("[T]he required showing of irreparable injury is not eliminated simply by virtue of a claim alleging violation of statutory or constitutional rights."), *aff'd*, 548 F.2d 977 (D.C.Cir.1976).

Plaintiff incorrectly claims that "loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." P.Mem. at 18 (citing *Elrod*, 427 U.S. at 373). That statement, by a three-Justice plurality, is not apposite here, as plaintiff has not "lost" any rights at all, and has failed to show the imminent likelihood of any such loss.[13]

Moreover, this Circuit has clarified the holding of *Elrod*—imminent violation of constitutional rights—even if proven—does not, by itself, constitute irreparable injury. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 301 ("this court has construed *Elrod* to require movants to do more than merely allege a violation of freedom of expression in order to satisfy the irreparable injury prong of the preliminary injunction framework.").

Despite plaintiff's implications otherwise, merely asserting a "chilling effect" on the exercise of First Amendment rights is insufficient to demonstrate constitutional injury. *See, e.g.,*

nothing "imminent" about the instant situation, as plaintiff may continue to operate its business for at least two additional months. DEx. 2.

*Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm . . . ."); *DKT Memorial Fund, Ltd. v. USAID*, 887 F.2d 275, 298–99 (D.C. Cir. 1989) (despite initial rejection of claim at trial court, an opportunity to amend, and then remand, plaintiffs "still com[e] before us with a bare allegation of 'subjective chill'") ("Plaintiffs were on quite adequate notice long ago of the need for such specific present harm and have demonstrated none.") (citing *Laird*); *Hatfill v. Ashcroft*, 404 F.Supp.2d 104, 118–19 (plaintiff "having failed to show that his First Amendment rights were *actually chilled*, has not stated a claim for which relief can be granted . . . .") (emphasis in original).

There is nothing remotely "imminent" here in the broad sense of the word; nothing has happened yet or may occur in the immediate future requiring *emergency* injunctive relief. Plaintiff speculative fears are unsupported by any competent evidence.

Plaintiff fails to make any showing of irreparable harm and therefore its request for a preliminary injunction must fail.

### 3. The Balance of Equities Favors Denying Injunctive Relief.

Although plaintiff has failed to show the imminent enforcement (to its alleged detriment) of any law at all, the balance of equities tips decidedly in favor of defendants where plaintiff essentially is asking this Court to issue a mandatory injunction *before* any administrative proceeding has been initiated. In other words, plaintiff seeks the ultimate relief at the beginning of the litigation.

---

[13]     "Because the [*Elrod*] plurality's discussion of irreparable harm did not enjoy support from a majority of Justices, it is not binding precedent . . . ." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 300 n.7.

An injunction would substantially injure the District of Columbia, its citizens, and the administrative process of regulating liquor licenses and sexually oriented businesses. "[A]ny time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). *See also Greene*, 806 A.2d at 223 (quoting *New Motor Vehicle Bd.*).

If plaintiff's relief were to be granted, the door would be opened to allow every applicant who feared potentially adverse administrative decisions to bypass the mandated process. To allow this type of challenge would undermine substantial local-government interests. Any "aggrieved party" would be able to ignore the administrative process and go straight into federal court. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 290 ("[D]emands for preliminary relief that inflict untoward detriment on persons not party to the case will [be rejected], as will motions that do not further the public interest.").

In these circumstances, the District of Columbia enjoys the balance of the equities in its favor.

### 4. The Public Interest Favors the District.

It is plaintiff's self-interest, not the public interest, which is at the root of its request. The public interest favors denying plaintiff's request for a preliminary injunction.

In essence, plaintiff asserts that it is not bound by the same process that applies to every other potential liquor-license transferee. Allowing plaintiff to avoid that mandated process would turn the statutory scheme on its head. The public interest demands more than plaintiff's self-interest. The public interest is best served by allowing the appropriate administrative process including, where applicable, public input, to proceed.

III. Conclusion

For the foregoing reasons, the defendants urge the Court to deny plaintiff's request for emergency injunctive relief. A proposed Order is attached hereto.

DATE: May 7, 2007                    Respectfully submitted,

                                     LINDA SINGER
                                     Attorney General for the District of Columbia

                                     GEORGE C. VALENTINE
                                     Deputy Attorney General, Civil Litigation Division


                                          /s/ Ellen A. Efros
                                     ELLEN A. EFROS, D.C. Bar No. 250746
                                     Chief, Equity Section I
                                     441 Fourth Street, N.W., 6th Floor South
                                     Washington, D.C. 20001
                                     Telephone: (202) 442-9886
                                     Facsimile: (202) 727-0431


                                          /s/ Andrew J. Saindon
                                     ANDREW J. SAINDON, D.C. Bar No. 456987
                                     Assistant Attorney General
                                     Equity I Section
                                     441 Fourth Street, N.W., 6th Floor South
                                     Washington, D.C. 20001
                                     Telephone: (202) 724-6643
                                     Facsimile: (202) 727-0431
                                     andy.saindon@dc.gov

| DC HOME | DC GUIDE | RESIDENTS | BUSINESS | VISITORS | DC GOVERNMENT |





CFO HOME

TAXPAYER SERVICE
CENTER

REAL PROPERTY
SERVICES
Property Tax Bills
Property Tax Rates
and Calculation
Property Assessment
Process
Property Assessment
Appeals
Tax Relief Credits
Search Real Property
Sales Database
Search Real Property
Assessment Database

CFO / OTR Search

**Prev**

# Property Detail

**Address:** 2840 ALABAMA AV SE

**SSL:**      5632 0004

### Record Details

| | | | |
|---|---|---|---|
| **Neighborhood:** | HILLCREST | **Sub-Neighborhood:** | A |
| **Use Code:** | 42 - Store-Misc | **Class 3 Exception:** | No |
| **Tax Type:** | RL - DC Redevelopment Land Authority | **Tax Class:** | 002 - Commercial |
| **Homestead Status:** | ** Not receiving the Homestead Deduction | | |
| **Assessor:** | THOMAS STEVENS | | |
| **Gross Building Area:** | | **Ward:** | 7 |
| **Land Area:** | 1,598 | **Triennial Group:** | 1 |

### Owner and Sales Information

| | |
|---|---|
| **Owner Name:** | RLA REVITALIZATION CORPORATION |
| **Mailing Address:** | 2025 M ST NW STE 600; WASHINGTON DC20036-3387 |
| **Sale Price:** | $624,000 |
| **Sale Date:** | 03/28/2006 |
| **Instrument No.:** | 40102 |

### Tax Year 2008 Preliminary Assessment Roll

| | Current Value | Proposed New Value (2008) |
|---|---|---|
| **Land:** | $37,740 | $82,030 |
| **Improvements:** | $172,930 | $204,950 |
| **Total Value:** | $210,670 | $286,980 |
| **Taxable Assessment:** * | $210,670 | $286,980 |

* Taxable Assessment after Tax Assessment Credit and after $60,000 Homestead Credit, if applicable. (Click here for more information).

** If you believe you should be receiving tax relief through the Homestead deduction program and if you are domiciled in the District and this property is your principal place of residence, you can access the link below, complete the form, and return it per the instructions. For additional information regarding the Homestead program, call (202)727-4TAX. Click here to download the Homestead Deduction and Senior Citizen Tax Relief application *

**View Tax Information** | **View Payments**

Government of the District of Columbia
Citywide Call Center : (202) 727-1000
TTY/TDD Directory

Telephone Directory by
Topic | Agencies | DC
Council | Search |
Elected Officials

John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004

Case 1:07-cv-00707-HHK     Document 5-2     Filed 05/07/2007     Page 2 of 2

Feedback  |  Translation
|  Accessibility  |  Privacy
& Security  |  Terms &
Conditions

 **RLARC**

BOARD OF DIRECTORS

**W. Ronald Evans,** Chair

**James L. Hudson,** Vice Chair

**Kathryn Donaldson Baker**

**Margret Kellems**

**Thomas B. Murray**

**Joseph A. Reyes**

**Honorable Adrian M. Fenty**
Mayor, District of Columbia
Ex-Officio

**Natwar M. Gandhi**
Chief Financial Officer for
the District of Columbia
Ex-Officio

INTERIM PRESIDENT
AND CHIEF EXECUTIVE
OFFICER

**Therman A. Baker, Jr.**

<u>VIA CERTIFIED MAIL</u>

Attn: Eric Whitehead
Mystery Productions Entertainment, LLC
2840 Alabama Avenue
Washington, DC 20020

April 6, 2007

Subject:   Ninety Day Notice Letter
             NCRC's intent to relocate all tenants at the existing Skyland Shopping Center

Dear Mr. Whitehead:

Settlement on the property located at 2840 Alabama Avenue, SE took place on March 27, 2006.  We are aware that Diversified Property Services has been working with Mystery Productions Entertainment to find a replacement location for your business.

Since the Skyland Development Project is proceeding forward and 98.5% of the property is now owned by NCRC, we are hereby giving a 90 day notice (July 6, 2007) to vacate 2840 Alabama Avenue, SE.

Diversified Property Services will continue to work with you regarding relocation issues. Please keep in touch with Donovon Padgett (202-481-9447) of my staff or Richard Klugh of Diversified Property Services (410-252-5075) if you have any questions or concerns.

Sincerely,

Ted Risher

Ted Risher
Director of Real Estate Development

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                             )
MYSTERY PRODUCTIONS                          )
ENTERTAINMENT, LLC, T/A                       )
CLUB RENDEZVOUS,                             )
                                             )
                 Plaintiff,                  )
                                             )
        v.                                   )        Civil Action No.07-00707 (HHK)
                                             )
DISTRICT OF COLUMBIA,                        )
                                             )
                 Defendant.                  )
_____)

ORDER

     Upon consideration of the Plaintiff's "Motion Against the District of Columbia Government for a Preliminary and Permanent Injunction," the Memorandum of Points and Authorities in Support thereof and the Defendant's opposition thereto, the entire record herein, and it appearing that the relief should be denied, it is hereby:

     ORDERED, that Plaintiff's Motion is hereby DENIED, for the reasons stated in open court and in Defendant's opposition.

     SO ORDERED.


DATE: _____          _____
                                    HENRY H. KENNEDY
                                    United States District Judge