UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| MYSTERY PRODUCTIONS ENTERTAINMENT, LLC, T/A CLUB RENDEZVOUS, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No.07-00707 (HHK) |
| DISTRICT OF COLUMBIA, | ) ) |  |
| Defendant. | ) ) |  |

---

DEFENDANT'S REPLY TO
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to LCvR 7(d), defendant ("the District"), hereby briefly reply to plaintiff's

Opposition to the District's Motion to Dismiss or, in the Alternative, for Summary Judgment.


Introduction and Summary of Argument

Plaintiff proceeds as though the District had not filed its dispositive motion, never

addressing any of the fatal flaws in its Complaint identified by the District—the lack of any

current or imminent injury or threat of enforcement from any identified "government official,"

and the lack of any evidence that plaintiff has applied or will apply to transfer its liquor license.

Instead, plaintiff relies chiefly on the same insufficient evidence it provided earlier—one vague,

self-serving declaration dated the day before the Complaint was filed.[1]

---

[1]    The only "new" evidence provided by plaintiff, exhibit 3, is a news release from the Alcoholic Beverage Control Board ("ABC") concerning a *different* nude-dancing club that had applied to transfer its liquor license. Leaving aside the questionable relevance of the decision to the instant unripe claim, the ABC decision requested that the Council review the policy issues

Moreover, plaintiff never discusses—let alone distinguishes—the majority of controlling cases cited by the District. Plaintiff presents nothing new here, merely rehashing its prior unsuccessful arguments. Plaintiff has failed to rebut the District's showing. The Court should abstain from hearing plaintiff's unripe claims and decline plaintiff's invitation to inject itself into this quintessentially local matter.

There are no material facts in dispute. Plaintiff's Opposition to the District's dispositive motions thus fails to comply with Fed. R. Civ. P. 56(e), which requires that a party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." *See also* LCvR 56.1 (an opposition to a motion for summary judgment "shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated . . . .").

Plaintiff devotes almost four full pages to its "Statement of Material Facts in Dispute," but the facts of this case simply do not require such an extensive discussion. With the exception

---

involved in the displacement of such clubs. The Council has done so. *See* D.C. Bill No. 17-109, "One-Time Relocation of Licensees Displaced by the Ballpark and Skyland Development Project Amendment Act of 2007," which has passed the Council. *See* http://www.dccouncil.washington.dc.us/lims/BillRecord2.asp?legno=B17-0109. Assuming that the Mayor signs it, after the congressional review period it will become law. The legislation loosens the restrictions on relocation for establishments like plaintiff's. Even assuming plaintiff's claims are ripe, this legislation—if it becomes law—will moot those claims. Moreover, the mere existence of this legislation, over and above its text, underscores the appropriateness of abstention. "[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question . . . ." *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1124 (D.C. Cir. 2004) (*quoting Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83 (1975) (discussing *Pullman* abstention) (*citing Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941)). *See also Justice v. Superior Ct. of the District of Columbia*, 732 F.2d 949, 950 (D.C. Cir. 1984) (applying *Pullman* to the District).

of paragraph one (which fact, although immaterial, the District does not dispute), plaintiff's statement consists solely of argument and legal conclusions. Plaintiff has utterly failed to set forth *any* specific, material facts that are at issue.

Merely reciting the summary judgment "buzzwords" is insufficient to counter the District's motion.

<u>Argument</u>

A party opposing summary judgment has the burden of producing *some* evidence showing a genuine issue of material fact. The non-moving party must demonstrate the existence of disputed issues by reference to affidavits or other materials that "set forth specific facts showing that there is a genuine issue for trial." *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Fed. R. Civ. P. 56(e) and citing LCvR 56.1).

This means that plaintiff must point to sufficient evidence in the record to show the existence of a genuine issue of material fact as to *each* element of its claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980) (compliance with local rule "isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record."). *See also Pine Ridge Coal Co. v. Local 8377, UMW*, 187 F.3d 415, 421–22 (4th Cir. 1999) ("[O]nce the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact.").[2]

---

[2]     The only "exemption" to Rule 56(e)'s requirement of evidence applies if a party requests, through a motion, additional time to present an affidavit with specific facts, and sets forth the reasons why the party is currently unable to present the necessary opposing material. *See id*. Plaintiff failed to submit any such motion, nor is there any indication in the record that discovery is warranted here. *See also Cacevic v. City of Hazel Park*, 226 F.3d 483 (6th Cir. 2000)

Parties invoking a federal court's jurisdiction at summary judgment may not rest on "'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" demonstrating standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (*quoting* Fed.R.Civ.P. 56(e)).

Plaintiff completely failed in its burden, never identifying *any* specific threat of enforcement by any identifiable "government officials," on any finite timetable. Such a failure to provide *any* details precludes standing. *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999) ("First and foremost, there must be alleged (and ultimately proven) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical") (quoting *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998)). *See also Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) ("[s]tanding cannot be 'inferred argumentatively' but rather 'must affirmatively appear in the record'") (quoting *Spencer v. Kemma*, 523 U.S. 1, 10–11 (1998)).

Plaintiff failed to establish its standing to maintain this pre-enforcement challenge, because it failed to demonstrate by specific facts that it faces a "credible and immediate" threat of enforcement. *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979); *See also Parker v. District of Columbia*, 478 F.3d 370, 374 (D.C. Cir. 2007) (plaintiffs in pre-enforcement challenge to District law failed "to show that the District had singled them out for prosecution," and because they could show "nothing more than a general threat of prosecution by the District, [t]heir feared injury [is] insufficient to support Article III standing.") (citing *Seegars v. Gonzalez*, 396 F.3d

---

(party's response to summary judgment motion stated that discovery would allow successful opposition, but did not specify facts it hoped to discover, or why it had failed previously to discover the information).

1248, 1251 (D.C. Cir. 2005) and *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997).

The Circuit in *Parker* explained the holdings of *Navegar* and *Seegars*: plaintiffs bringing pre-enforcement challenges to District laws lack standing, even where they affirmatively express an intent to violate those laws, where "prosecution was not imminent" and "the threat of prosecution was shared among the (presumably) many [entities] whose products fit the statutory description . . . ." *Parker*, 478 F.3d at 374. Indeed, the *Seegars* plaintiffs "were required to show that the District had singled them out for prosecution . . . ." *Id*.

Plaintiff responded to the District's arguments on standing with only conclusory assertions of what it might be required to do at some indefinite future date, and the insufficient, vague evidence it provided previously. *See* P.Opp. at 13–14. Plaintiff has thus failed to demonstrate that it has standing.

Because there are no disputes over material facts here, there is no need for further factual development through discovery. Plaintiff's claims—to the extent they are even viable—involve legal issues only, hence resolution by summary judgment is appropriate.

Plaintiff's repeated assertions that it has set forth sufficient facts to allow this case to proceed is predicated on an incorrect pleading standard, one which the Supreme Court expressly rejected in a recent decision which clarified how a complaint challenged by a Rule 12(b)(6) motion must be weighed. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955 (May 21, 2007), the Court held that, while a complaint so attacked "does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Slip op.* at 8 (citing, *inter alia*, *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). But that is precisely what plaintiff has done here.

Moreover, the *Bell Atlantic* Court specifically disavowed the main case plaintiffs rely on, *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which innumerable courts have cited over the decades for the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

> *Conley*'s "no set of facts language" has been questioned, criticized, and explained away long enough. [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.

*Bell Atlantic*, *supra*, at 16–17.

More specifically, the Court noted that, for a complaint to survive a Rule 12(b)(6) motion to dismiss, there must be a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." *Id*. at n.8 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

The instant Complaint fails to meet even this minimal standard; it is precisely what *Bell Atlantic* rejected—a set of labels and conclusions, a formulaic recitation of the elements of various causes of action. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic*, *supra* at 8.

Plaintiff never indicates what relevant evidence it hopes discovery will reveal.[3] "[B]efore proceeding to discovery, a complaint must allege facts suggestive of illegal conduct." *Id*. at n.8. Plaintiff does not meet this threshold.[4]

---

[3]    Plaintiff asserts that discover is necessary to determine whether the District has met its purported burden as set forth by the Supreme Court in *Alameda Books, Inc. v. City of Los Angeles*, 535 U.S. 425 (2002) (*plurality opinion*). P.Opp. at 18–19. As discussed herein,

*Plaintiff's "Overbreadth" Challenge Fails.*

Plaintiff appears to argue that, because it styles its claims as an "overbreadth" challenge, it need not demonstrate either standing or ripeness. *See* P.Opp. at 11. Plaintiff is incorrect all around, as the primary case cited by plaintiff amply demonstrates.

The provision of law that plaintiff disputes, D.C. Official Code § 25-374 (2006 Supp.), does not "ban" any speech at all, by plaintiff or anyone else. At the very most, "[i]t merely regulates the places where communications may occur." *Hill v. Colorado*, 530 U.S. 703, 731 (2000). Consequently, "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id*. at 732 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). *See also, e.g., United States v. Popa*, 187 F.3d 672, 678 (D.C. Cir.

---

however, plaintiff has misread and misapplied that opinion and, thus, its reliance on it as support for engaging in discovery is misplaced.

[4]    The Supreme Court also rejected the criticism that its analysis "runs counter to" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), another case on which plaintiff relied. *Id*. at 23. In that employment-discrimination case, the Court reversed what amounted to a "heightened pleading standard" applied by the Second Circuit, because Swierkiewicz's pleading "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination . . . ."*Bell Atlantic*, *supra*, at 23 (citing *Swierkiewicz*, 534 U.S. at 514). Here, in contrast, plaintiff has utterly failed to allege *any* details of the purported threat of enforcement, never identifying which "government officials" made such a threat, or when it occurred. Such sparse, speculative allegations are insufficient to state a claim, as plaintiff has not alleged enough details to even support standing. "Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atlantic*, *supra*, at 24.

1999) (overbreadth doctrine is "'strong medicine' to be applied 'sparingly and only as a last resort.'") (quoting *Broadrick*, 413 U.S. at 613).[5]

Plaintiff has made no showing (or even allegation) as to what, specifically, is "overbroad" about the disputed provision, hence its challenge must be rejected. *Virginia v. Hicks*, 539 U.S. 113, 123–24 (2003) (rejecting overbreadth claim where party failed to show that the policy "prohibits a 'substantial' amount of protected speech in relation to its many legitimate applications. That is not surprising, since the overbreadth doctrine's concern with 'chilling' protected speech 'attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct.'") (quoting *Broadrick*, 413 U.S. at 615).

The identical situation obtains here: plaintiff has failed to show that the disputed law prohibits *any* protected speech, and its overbreadth claim attenuates fatally as the law regulates, at most, the *conduct* associated with certain speech, and not the content of the speech itself.[6]

"Petitioners have not persuaded us that the impact of the statute on the conduct of other[s] will differ from its impact on their own [conduct]. Like petitioners' own activities, the conduct of other[s] at all [similar] facilities are encompassed within the statute's 'legitimate sweep.' Therefore, the statute is not overly broad." *Hill*, 530 U.S. at 732.

---

[5]    *See also Board of Trustees of SUNY v. Fox*, 492 U.S. 469, 484–85 (1989) ("[i]t is not the usual judicial practice, . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily.").

[6]    Plaintiff also wastes considerable effort responding to an argument that the District did not make. *See* P.Opp. at 11–12 (plaintiff "is not required to demonstrate that its conduct is expressive"). The District never claimed otherwise; nude dancing is assuredly "expressive," even if just barely qualifying for First Amendment protection. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (*plurality opinion*) ("nude dancing of the type at issue here is expressive conduct, although we think it falls only within the outer ambit of the First Amendment's protection.") (citations omitted).

"[W]e have recognized the validity of facial attacks alleging overbreadth (though not necessarily using that term) in relatively few settings, and, generally, on the strength of *specific reasons weighty enough to overcome our well-founded reticence*." *Sabri v. United States*, 541 U.S. 600, 609–10 (2004) (emphasis added). Plaintiff has not provided *any* reasons to support its claim of facial overbreadth, much less the "weighty" reasons required.

Plaintiff similarly misreads the plurality opinion of *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002). It can no longer be reasonably questioned that it is a "settled position" that cities must be able to address the secondary effects of even protected speech. *Id* at 438. But as the District explained in its dispositive motion, the disputed provision of law here is not "content based," even if it *did* regulate speech, hence it receives intermediate scrutiny. *Id*. at 434 (citing *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 50 (1986)).

The District's law here is aimed not at the *content* of the expressive conduct, but at the secondary effects of adult establishments; it is a "valid, content-neutral time, place, and manner regulation." *American Library Ass'n v. Reno*, 33 F.3d 78, 85 (D.C. Cir. 1994) (citing *Renton*, 475 U.S. at 47); *Boos v. Barry*, 485 U.S. 312, 320 (1988) (same).

Because the District's law, like the nude-dancing ordinance at issue in *Pap's A.M.*, "is unrelated to the suppression of expression, then the regulation need only satisfy the 'less stringent' standard from [*United States v. O'Brien*, 391 U.S. 367 (1968)] for evaluating restrictions on symbolic speech." *Pap's A.M.*, 529 U.S. at 289. Consequently, the provision will pass muster if (1) is within the constitutional power of the government, (2) it furthers an important or substantial governmental interest that is (3) unrelated to the suppression of free expression, and (4) if the incidental restriction on the First Amendment is no greater than is

essential to the furtherance of that interest. *American Library Ass'n v. Reno*, 33 F.3d 78, 88 (D.C. Cir. 1994) (quoting *O'Brien*, 391 U.S. at 377)).

The District's law easily meets this test, even assuming this is a "free speech" case at all, for the exact reasons the Supreme Court upheld the *more* restrictive nude-dancing ordinance in *Pap's A.M.*[7] *See also JMM Corp.*, 378 F.3d at 1126 ("enforcement of [land-use] regulations, like those at issue here, constitutes an important state interest.") (citing *Alameda Books,* 535 U.S. at 435–37 and *Renton*, 475 U.S. at 50); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62–63 (1976) (upholding zoning regulation of sexually oriented businesses as valid "time, place, and manner" restriction).

Plaintiff appears to read *Alameda Books* as requiring a shift of the burden to the District to justify its law here. P.Opp. at 18–19. Plaintiff is incorrect.

There was no majority opinion in *Alameda Books*, hence under *Marks v. United States*, 430 U.S. 188, 193 (1977), the opinion that states the narrowest ground for the Court's holding controls. Justice Kennedy's concurrence in *Alameda Books* is the narrowest opinion, and has been recognized elsewhere as controlling. *See Peek-A-Boo Lounge of Bradenton v. Manatee County*, 337 F.3d 1251, 1264 (11th Cir. 2003); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 722 (7th Cir. 2003); *SOB, Inc. v. County of Benton*, 371 F.3d 856, 862 n.1 (8th Cir. 2003).

Justice Kennedy noted that the plurality "gives the correct answer" to the question of how much evidence is required to support a secondary-effects ordinance. *Alameda Books*, 535 U.S. at 448. The plurality found that a plaintiff's mere "complaints" that the city's justification for its ordinance was incorrect was insufficient. *Id.* at 439.

---

[7]       The ordinance at issue in *Pap's A.M.* did not address the zoning of adult establishments as such, but banned all "public nudity" within the city of Erie, Pennsylvania. "To

> In *Renton*, we specifically refused to set such a high bar for municipalities that want to address merely the secondary effects of protected speech. We held that a municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial, independent government interest. 475 U.S., at 51–52.

*Id*. at 438 (citation omitted).

Justice Kennedy subsequently elaborated on this point, noting that "a city must have latitude to experiment, at least at the outset, and that very little evidence is required." *Id*. at 450 (Kennedy, J., concurring) (citing *Renton*, 475 U.S. at 51–52 ("The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses")).

Indeed, ample precedent holds that, even in "strict scrutiny" cases, "history, consensus, and 'simple common sense'" can, alone, justify restrictions on speech. *See, e.g., Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) ("we have permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether") (citations omitted). *Cf. Pap's A.M., Inc.*, 529 U.S. at 296–97 (*plurality opinion*):

> Because the nude dancing [here] is of the same character as the adult entertainment at issue in *Renton*, [*American Mini Theatres*], and [*California v. LaRue*, 409 U.S. 109 (1972)], it was reasonable for Erie to conclude that such nude dancing was likely to produce the *same* secondary effects. And Erie could reasonably rely on the evidentiary foundation set forth in *Renton* and *American Mini Theatres* to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood. *See* [*Renton*, 475 U.S. at 51–52] (indicating that reliance on a judicial opinion that describes the evidentiary basis is sufficient). In fact, Erie expressly relied on [*Barnes v. Glen Theatre, Inc*., 501 U.S. 560 (1991)] and its discussion of secondary effects, including its reference to *Renton* and *American Mini Theatres*. Even in cases addressing regulations that strike closer to the core of First Amendment values, we have accepted a state or local government's

---

comply with the ordinance, these dancers must wear, at a minimum, 'pasties' and a 'G-string.'" *Pap's A.M.*, 529 U.S. at 284.

reasonable belief that *the experience of other jurisdictions is relevant* to the problem
it is addressing.

*Id*. (emphasis added) (citations omitted).

Plaintiff here "has simply asserted that the council's evidentiary proof was lacking. In the
absence of any reason to doubt it, the city's expert judgment should be credited." *Id.*


*Abstention Remains Appropriate Here.*

Plaintiff never mentions *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1120 (D.C.
Cir. 2004), which controls here. There, as the District has noted, the Circuit held that *Younger*
abstention was appropriate even where, as here, "a defendant levels a facial First Amendment
challenge against a regulation and contends that its existence has a chilling effect on his free
speech." *JMM Corp.*, 378 F.3d at 1122 n.11. Plaintiff has not distinguished this controlling
proposition, claiming only that "the *Younger* doctrine does not apply to the instant case, as there
are not any parallel state proceedings currently pending." P.Opp. at 16. But plaintiff cites no
cases for this proposition so limiting the *Younger* doctrine, and the District is aware of none.

*JMM Corp.* holds that, regardless of where the local proceedings "begin," a party has an
adequate remedy for its asserted constitutional violations because it can raise them either as
defenses (in an administrative agency proceeding) or directly as claims (in Superior Court). *JMM
Corp.*, 378 F.3d at 1121. Consequently, it is of no moment that there are no *pending* local
proceedings.[8]

Plaintiff also appears to attempt to evade abstention by claiming that the "Alcohol [sic]
Beverage Regulation Administration has already decided how [D.C. Official Code § 25-374] is

---

[8]     The fact that there are no pending local proceedings is entirely of plaintiff's
doing, of course, as it has not yet applied for a transfer of its liquor license.

to be interpreted . . . ." P.Opp. at 15. But even if that claim were correct, which the District does not concede, *see* n. 1, *supra*, abstention would still be appropriate. *See JMM Corp.*, 378 F.3d at 1124–25 (discussing abstention under *Pullman*, which holds that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question.") (quoting *Harris County Comm'rs v. Moore*, 420 U.S. 77, 83 (1975)). *Cf. Legal Serv. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001) ("It is well understood that when there are two reasonable constructions for a statute, the Court should prefer the interpretation which avoids the constitutional issue.") (citations omitted).

Conclusion

For the foregoing reasons, and those contained in its dispositive motion, the defendant moves to dismiss the Complaint or, in the alternative, for summary judgment.

DATE: June 8, 2007                    Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____/s/ Ellen A. Efros_____
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431

_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov